FILED
2026 Sep-09 PM 01:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**FOR PUBLICATION**

In the
# United States Court of Appeals
For the Eleventh Circuit

No. 24-13382

MARTIN D. RENFROE,

*Plaintiff-Appellee-Cross Appellant,*

*versus*

USAA GENERAL INDEMNITY CO.,

*Defendant-Appellant-Cross Appellee.*

Appeals from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:21-cv-01649-SGC

Before BRANCH and GRANT, Circuit Judges, and DAMIAN,* District Judge.

GRANT, Circuit Judge:

* Honorable Melissa Damian, United States District Judge for the Southern District of Florida, sitting by designation.

A father and daughter owned a house together. But it was not as idyllic as it might sound—each warned the insurance company that the other would likely burn the house down. Remarkably, the insurer issued and maintained the policy anyway. Less remarkably, the house burned down a month later.

The father sought a payout. But the policy had a provision that barred even an innocent insured party from collecting for a loss caused by the intentional conduct of a not-so-innocent co-insured party. When the insurer denied coverage under that exclusion, the father sued for breach of contract and bad faith. In another unexpected turn of events, the district court invalidated the exclusion as void under Alabama public policy. That was error. Neither Alabama's code nor its courts have such a rule. But the district court was correct to reject the father's bad-faith denial claim—the insurer had plenty of evidence that he may have committed arson.

We therefore reverse the district court's ruling against the insurer on the enforceability of the exclusion and remand for a new trial, but affirm its grant of summary judgment on the bad-faith claim.

## I.

Dennis Renfroe and his daughter Sherry Lambert owned property in Centre, Alabama, including a house where Lambert

was living.[1] The two were, to put it mildly, not getting along. Lambert had taken out a restraining order against Renfroe several years earlier and said they hadn't spoken outside of a courtroom in five years. Plus, the two tangled in court over both the Alabama property and a half-million-dollar investment account they shared. Both wanted complete control of the property; in fact, just two weeks before the house burned down, a state court had ordered it sold at auction so the proceeds could be divided.

The two "hated each other," as Renfroe's own briefing admits, which fueled a mutual suspicion. In January 2020, before he took out the policy, Renfroe warned USAA that he thought his daughter was "in the process of setting things up to burn the house" because she "had been moving furniture in and out." For her part, Lambert claims that she had moved "sentimental" items out of the house after hearing that her father (along with her ex-husband) was planning to burn it down.

Somehow undeterred, USAA insured the property, providing $500,000 of coverage on the house. The policy identified both Renfroe and Lambert as insureds. The policy also included a provision entitled "**LOSSES WE DO NOT COVER**":

1. **h. Intentional Loss,** meaning loss arising out of any act any "**insured**" commits or conspires to commit

---

[1] As the record reflects, Martin D. Renfroe goes by Dennis. Meanwhile, his daughter's last name is given variously as Lambert, Renfroe, and Renfroe-Lambert. For the sake of simplicity, we refer to him as Renfroe and her as Lambert.

> with the intent to cause a loss. Even "**insureds**" who did not commit or conspire to commit the act causing the loss are not entitled to coverage.
>
> However, if you commit an act with the intent to cause a loss, we will provide coverage to an innocent "**insured**" victim of domestic abuse, as defined in the "Domestic Abuse Insurance Protection Act", to the extent of that person's interest in the property when the damage is proximately related to and in furtherance of domestic abuse.

This is known as an "innocent-insured exclusion" because it generally prevents even an innocent party from collecting on a policy if *another* insured intentionally causes a loss that would otherwise be covered.

When Lambert learned that her father had taken out the policy, she called USAA to share Renfroe's long history with house fires and warn them that she believed he was planning to burn this house down, too.[2] The policy remained in effect.

A few weeks later—surprise!—the house burned down. Renfroe filed an insurance claim. When USAA investigated, Renfroe and Lambert continued to point the finger at one another for arson. Although the final investigative report did not rule out

---

[2] At trial, Renfroe admitted to two previous house fires. Lambert added testimony about three other fires, including her own previous home (which Renfroe had also co-owned). For those keeping score, that makes the fire in this case number *six* for Renfroe, and he has already collected insurance payments on several.

an accidental cause, its analysis concluded that the fire's characteristics were consistent with arson. Believing that either Renfroe or Lambert had set the fire, USAA denied coverage—no matter which one was responsible, the policy's innocent-insured exclusion meant that neither could collect.

Renfroe sued, asserting state-law claims against USAA for breach of contract and tortious bad faith. After discovery, the parties both filed cross-motions for summary judgment. For the breach-of-contract claim, the district court concluded that the innocent-insured exclusion was "void under Alabama public policy," but sent the case to trial because payment could be denied if Renfroe himself had caused the fire. As for the bad-faith claim, the district court agreed with USAA that it failed as a matter of law.

Before opening statements, USAA again asked whether it could argue that Lambert had set the fire, and that the innocent-insured exclusion therefore prevented Renfroe from recovering because she was also insured under the policy. Renfroe, too, asked to present evidence implicating Lambert. The court allowed both parties to offer evidence that Lambert was culpable, but barred USAA from presenting the innocent-insured exclusion. Consistent with its earlier decision that the exclusion was void, the court allowed the policy itself and the denial letter to be submitted to the jury only in redacted form, omitting any reference to the exclusion. And that meant USAA's only possible defense would be convincing the jury that Renfroe alone was responsible for the fire—a task complicated by the fact that its own evidence of arson tended to

point inconclusively to either Renfroe or Lambert. Meanwhile, Renfroe argued during closing that the evidence pointed to Lambert setting the fire.

The jury returned a verdict of $425,000 in his favor. Both parties filed post-trial motions: USAA, to reduce the verdict under the terms of the policy, and Renfroe, to apply prejudgment interest to the award. The district court granted USAA's motion, denied Renfroe's, and entered judgment for Renfroe in the amount of $226,727.85.

On appeal, USAA argues that the district court erred in precluding USAA from invoking the innocent-insured exclusion in its defense. Renfroe challenges both the district court's denial of his motion for prejudgment interest and its grant of summary judgment to USAA on his bad-faith denial-of-coverage claim.

**II.**

The interpretation of an insurance contract, including whether one of its provisions is contrary to public policy, is a matter of law, so our review is de novo. *State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1178 (11th Cir. 2023). We also review a district court's grant of summary judgment de novo. *Nehme v. Fla. Int'l Univ. Bd. of Trs.*, 121 F.4th 1379, 1383 (11th Cir. 2024).

**III.**

The district court was wrong to find USAA's innocent-insured exclusion void as a matter of Alabama public policy. Alabama courts leave policy to the legislature and read terms in

insurance policies the way an ordinary person would. For that reason, the exclusion in Renfroe's policy is enforceable. But even without that, USAA denied his claim in good faith because it had evidence that he started the fire.

**A.**

Alabama courts, as a rule, do not reach out to void contractual provisions for reasons of public policy. In fact, they are "averse to holding contracts unenforceable" on that ground "unless their illegality is clear and certain." *Grimes v. Alfa Mut. Ins. Co.*, 227 So. 3d 475, 490 (Ala. 2017) (emphasis omitted and quotation omitted). And that is so only if a provision "contravenes some positive statute or some well-established rule of law." *Id.* (emphasis omitted and quotation omitted). In justifying its light-touch approach to public policy arguments, the Alabama Supreme Court has explained that it defers to the state legislature as the body that "has the exclusive domain to formulate public policy in Alabama." *Ex parte Ankrom*, 152 So. 3d 397, 420 (Ala. 2013) (quotation omitted). If anything, this rule is even firmer for exclusions in insurance contracts, because the court has specifically held that such provisions "are permitted and are not against public policy" so long as they "do not conflict with statutory law." *Grimes*, 227 So. 3d at 491.

The Alabama Code does not prohibit innocent-insured exclusions. *See* ALA. CODE §§ 27-22-1 to 27-22-65. Nor does Renfroe point to any conflict with a statute that the innocent-insured exclusion in his policy would produce. It is true that at least

one Alabama statute forbids innocent-insured exclusions in one specific context: abuse. The Domestic Abuse Insurance Protection Act requires an insurer to cover a claim by "an innocent co-insured subject of abuse . . . when the damage or loss was proximately related to and in furtherance of abuse." ALA. CODE § 27-55-3(f). But that only proves the point—when the Alabama legislature wishes to prohibit an innocent-insured exclusion, it knows how to do it. *See City of Montgomery v. Town of Pike Rd.*, 35 So. 3d 575, 584 (Ala. 2009). And Renfroe's policy even carves out an exception to its innocent-insured exclusion, explicitly offering coverage where the Domestic Abuse Insurance Protection Act demands it.

In short, we see no evidence that USAA's innocent-insured exclusion is contrary to Alabama public policy—no statute or court case comes close to suggesting as much.

The district court saw things differently. It read one Alabama Supreme Court case, *Hosey v. Seibels Bruce Group*, as holding that all innocent-insured exclusions are contrary to public policy. *See* 363 So. 2d 751 (Ala. 1978). But that is not what *Hosey* said. Instead, its holding was that the interests of co-insureds are generally several rather than joint, which means that an innocent insured can collect on a policy even if their co-insured would be barred from doing so because they intentionally caused the loss. *Id.* at 754. True, *Hosey* was also an arson case, but the only time it mentioned "public policy" was to justify the well-accepted common law defense of arson against an insurance payout to the party who had set the fire. *Id.* at 753. The point of *Hosey* was that

this defense did not automatically extend to bar payment to an innocent person who was also insured under the policy—not that parties had no way to contract around that rule.

The *Hosey* court, we note, also cited an earlier opinion, *Feibelman*, in which the Alabama Supreme Court had rejected an implied or imputed exclusion for innocent insureds, while still allowing parties to contract for one with an explicit "clause or condition." *Feibelman v. Manchester Fire Assurance Co.*, 19 So. 540, 548 (Ala. 1896). In line with that case, the *Hosey* court declined to read an implied innocent-insured exclusion into a policy. *Hosey*, 363 So. 2d at 754. That is a far cry from declaring all innocent-insured exclusions contrary to Alabama public policy.

According to the *Feibelman-Hosey* approach, the innocent-insured exclusion in Renfroe's policy is enforceable under Alabama law. Renfroe argues that *Hosey* shows that Alabama law requires courts to construe the interests of co-insureds separately unless "express policy language" states otherwise. Maybe so, but that does not help him because the exclusion here could not be more express: the policy's list of "**LOSSES WE DO NOT COVER**" includes any "loss arising out of any act any '**insured**' commits or conspires to commit with the intent to cause a loss." And it goes on to emphasize that "[e]ven '**insureds**' who did not commit or conspire to commit the act causing the loss are not entitled to coverage." That language qualifies as express under any standard.

Renfroe retorts that the "express policy language" must meet a magic words requirement by using technical terms like

"collectively" or "jointly." No. Neither magic words nor jargon are required—an insurance policy "should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert." *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991) (emphasis omitted and quotation omitted). Where, as here, the terms are unambiguous, "Alabama courts enforce the insurance policy as written." *Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1140 (11th Cir. 2020) (quotation omitted). As it is, the policy language clearly communicates that intentional losses by any insured void coverage for all insureds. And that is good enough under Alabama law. The explicit exclusion in Renfroe's policy is enforceable.[3]

**B.**

We also consider the district court's grant of summary judgment to USAA on Renfroe's bad-faith denial-of-coverage claim. On that front, the court was correct.

A bad-faith claim "arises for an insurer's intentional refusal to settle a direct claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal." *Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 7 (Ala. 1981) (quotation omitted).

[3] Because we reverse the judgment against USAA, we need not consider Renfroe's argument that the district court abused its discretion in denying him prejudgment interest.

Under Alabama law, "all bad-faith claims fail on summary judgment where the trial court expressly finds as a matter of law that the insurer had a reasonably legitimate or arguable reason for refusing to pay the claim at the time the claim was denied." *Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1187 (11th Cir. 2023) (alterations adopted and quotation omitted). Put simply, if even "one reason for denial of coverage is at least arguable, this court need not look any further." *Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990) (quotations omitted).

Here, USAA had at least an arguable reason not to pay out—even without the innocent-insured exclusion—because it had evidence that Renfroe himself had intentionally caused the loss by committing arson. An insurer can establish a prima facie case of arson by presenting "(1) evidence of arson by someone, (2) evidence of motive on the part of the insured, and (3) evidence implicating the insured." *Bush v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 576 So. 2d 175, 179 (Ala. 1991). And the burden of proof in mounting an arson defense "is not particularly heavy" under Alabama law. *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533, 1535 (11th Cir. 1986).

We agree with the district court that USAA offered enough evidence at summary judgment to support a good-faith arson defense. To begin, its investigator concluded that the fire may have resulted from an "act of incendiarism." And Lambert had told him that she believed Renfroe had burned the house down "so that he would have the ability to purchase the land back at the courthouse

sale cheaper." Cell tower data suggested that Renfroe may have been near the house when the fire started. And on top of that, a gas line was severed from a space heater before the fire—something that Renfroe, as a former pipefitter, had the expertise to make happen.

Because USAA had evidence that Renfroe had caused the fire through arson, its denial of coverage was not in bad faith. Summary judgment was appropriate.

* * *

Alabama law has no public policy bar against innocent-insured exclusions like the one in Renfroe's insurance policy. That means USAA should have been able to defend its coverage denial on that basis. For that reason, we **VACATE** the district court's judgment against USAA on the breach-of-contract claim and **REMAND** for further proceedings.

As for the bad-faith denial-of-coverage claim, the district court was correct that USAA had at least an arguable basis to deny coverage, so we **AFFIRM** its grant of summary judgment to USAA.